UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT GRIFFIN,

              Petitioner,

    -vs-

SUPERINTENDENT KIRKPATRICK,
WENDE CORRECTIONAL FACILITY

              Respondent.
_____

**DECISION AND ORDER**

**No. 08-CV-0886T**

## I.   Introduction

*Pro se* petitioner Robert Griffin ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered March 7, 2003, in New York State, County Court, Monroe County (Hon. Frank P. Geraci, Jr.), convicting him, after a jury trial, of Burglary in the Second Degree (N.Y. Penal Law ("Penal Law") § 140.25 [2]);  Kidnapping in the Second Degree (Penal Law § 135.20); two counts of Sexual Abuse in the First Degree (Penal Law § 130.65 [1], [2]);  three counts of Rape in the First Degree (Penal Law § 130.35 [1], [3]);  Four Counts of Sodomy in the First Degree (Penal Law § 130.50 [1], [3]), Burglary in the First Degree (Penal Law § 140.30 [2]); two counts of Assault in the Second Degree (Penal Law § 120.05 [2], [6]); Robbery in the First Degree (Penal Law § 160.15 [3]); and Robbery in the Second Degree (Penal Law § 160.10 [2][a]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

### A. Introduction

In February 2003, Petitioner was tried on an eighteen-count indictment arising out of three separate incidents occurring between July 31, 1997 and September 1, 1999. The three incidents involved three separate female victims. The police were directed to Petitioner in April of 2002, when they were notified of a DNA match between Petitioner, who was then serving a prison sentence for another matter, and the DNA recovered from the three incidents discussed above. Trial Transcript [T.T.] 597.

### B. Petitioner's Crimes

**The Honeybunch Lane Incident - Town of Irondequoit**

In his statement to police, Petitioner admitted that, on July 31, 1997, he burglarized the home of the Frederick family on Honey Bunch Lane in the Town of Irondequoit. After entering the house, Petitioner heard the family's dog bark and decided that he would leave. By his own admission, Petitioner did not want to leave empty-handed, so he took a four-year-old girl, who was sleeping at the time, from the house and left with her. Petitioner drove around with the four-year-old girl, touching her vagina from both the outside and inside of her underpants. Petitioner then parked the car while he masturbated. After he ejaculated,

Petitioner placed his hand, which had semen on it, on the victim's leg. The DNA in this secretion was later found to match Petitioner's DNA. Petitioner then abandoned the victim by the side of the road, where she was found by a passerby who drove her to his place of employment and then called the police. T.T. 466-468, 472, 493. Later that night, the victim was taken to Rochester General Hospital where she was examined by Dr. Geoffrey Everett. Dr. Everett testified that "there was significant irritation and redness around the entrance to the vagina, as well as some fresh blood coming out of the vagina, and, just inside of the vaginal entrance, the hymenal ring had a tear within it with fresh blood coming from it . . . ." Dr. Everett's examination also revealed "dry flaking secretions" on the victim's right abdomen and thigh. T.T. 419-420.

**Hemingway Drive Incident - Town of Brighton**

In his statement to police, Petitioner admitted that, on April 10, 1999, he burglarized the home of the Lubkin family on Hemingway Drive in the Town of Brighton. By his own admission, Petitioner threw a rock through the window of the home and, upon entering, found two children inside. Petitioner took one of the children, a ten-year-old girl, into the living room where he took off her clothes and put his mouth on her vagina. Petitioner then took his penis out of his pants and instructed the ten-year-old girl to put it in her mouth, which she did. Petitioner then

masturbated and ejaculated on the victim. The DNA in this secretion was later found to match Petitioner's DNA. Before leaving the home, Petitioner struck the ten-year-old girl in the head with an exercise weight he had found in the house. T.T. 458-460, 550, 554-560, 943.

**LaCroix Court Incident - Town of Irondequoit**

In his statement to police, Petitioner admitted that, on August 31, 1999, he raped a sixty-seven-year-old woman as she was arriving at her apartment complex shortly before midnight. By his own admission, Petitioner grabbed the sixty-seven-year-old woman from behind, choked her until she became unconscious, and then raped her. Petitioner then got up and began walking away with the victim's purse, but came after the victim a second time when she regained consciousness and tried to get away. A neighbor looking out the window yelled, causing Petitioner to jump off the victim and run away. T.T. 448-451, 977, 985-989.

### C. Indictment, Trial and Sentencing

For the crimes committed at Honey Bunch Lane, Petitioner was charged with one count of Burglary in the Second Degree, one count of Kidnapping in the Second Degree, and two counts of Sexual Abuse in the First Degree. See Resp't App. H at 6-7.

For the crimes committed on Hemingway Drive, Petitioner was charged with two counts of Rape in the First Degree, three counts of Sodomy in the First Degree, two counts of Sexual Abuse in the

First Degree, one count of Burglary in the First Degree, one count of Assault in the Second Degree and one count of Robbery in the First Degree. Id. at 7-11.

For the crimes committed at LaCroix Court, Petitioner was charged with one count of Rape in the First Degree, one count of Robbery in the Second Degree, and one count of Assault in the Second Degree. Id. at 11-12.

A jury trial was held from February 3-13, 2000 before the Hon. Frank P. Geraci, Jr. Petitioner testified at trial in his own defense, denying his involvement in all three incidents and stating that he provided the police with neither a statement nor a saliva sample. Petitioner was convicted on all counts except the two counts of Sexual Abuse associated with the Hemingway Drive incident. Petitioner's confession admitted to these acts of sexual abuse, but the victim did not give such testimony at trial. T.T. 554-, 1010-1016, 1182-1183.

On March 7, 2003, Petitioner was sentenced to the maximum allowable prison term on each count, with sentences for each separate act to be served consecutively to the others. Sentencing Mins. [S.M.] 14-18.

### E. Direct Appeal

The Appellate Division, Fourth Department ("Fourth Department") unanimously affirmed Petitioner's judgment of conviction on June 8, 2007. People v. Griffin, 41 A.D.3d 1285 (4th

Dep't 2007) (Resp't App. K);  <u>lv. denied</u>, 9 N.Y.3d 923 (2007)
(Resp't App. P).

**F.  Collateral Proceedings**

On or about January 13, 2004, Petitioner filed a motion to
vacate his judgment of conviction, pursuant to N.Y. Crim. Proc. Law
§ 440.10, on the ground that his written consent to provide a DNA
sample was not voluntarily provided.  <u>See</u> Resp't App. A.  The
county court denied Petitioner's motion.  <u>See</u> Resp't App. C.  Leave
to appeal was denied.  <u>See</u> Resp't App. F.

On or about January 3, 2008, Petitioner filed a second motion
to vacate on the ground that he received ineffective assistance of
trial counsel.  <u>See</u> Resp't App. Y.  The county court denied
Petitioner's motion.  <u>See</u> Resp't App. BB.  Leave to appeal was
denied.  <u>See</u> Resp't App. EE.

**G.  The Habeas Corpus Petition**

This habeas corpus petition followed, wherein Petitioner seeks
relief on the following grounds: (1) ineffective assistance of
trial counsel; (2) deprivation of right to counsel;
(3) insufficiency of the evidence; (4) denial of right to a fair
trial; and (5) various Fourth Amendment issues.  <u>See</u> Pet. ¶ 22
Grounds One-Eight (Dkt. # 1); Traverse [Trav.] (Dkt. #9).

## III. General Principles Applicable to Habeas Review

### A.  The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision.  Williams, 529 U.S. at 412;  accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).    The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation.  Id. at 194.

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it

is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9 (1989) (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333, 277-78 (1992).

### C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating

that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. See <u>Harris</u>, 489 U.S. at 262 (citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. <u>See id.</u> It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).

## IV. Petitioner's Claims

## 1. Insufficiency of the Evidence

In ground three of the petition, Petitioner argues, as he did on direct appeal, that the evidence was legally insufficient to support the conviction of sexual abuse in the first degree[1] with respect to the element of forcible compulsion. <u>See</u> Pet. ¶ 22C; Trav., Point III. The Fourth Department determined that Petitioner had failed to properly preserve this issue for appellate review. <u>See</u> <u>Griffin</u>, 41 A.D.3d at 1286-7. Consequently, this claim is procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, whether substantive or procedural, that is independent of the federal question and adequate to support the

---

[1]    Penal Law § 130.65 [1] provides as follows: "A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact by forcible compulsion."

judgment. See Coleman, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at C.P.L. § 470.05(2)) to deny Petitioner's claim because the issue had not been properly preserved for appellate review. The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999). The Fourth Department's reliance on New York's preservation rule is an "adequate" and "independent" state ground which precludes this Court's review of Petitioner's claim.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). Petitioner makes a blanket statement that he "relies on 'miscarriage of justice exception' to get out of procedurally defaulted claims." Trav., 11. However, to claim this exception, Petitioner must make a factual showing that he is "actually innocent" of the crime for which he was convicted. See Harris, 489 U.S. at 262. Petitioner has made no such showing. Additionally, the Court notes that "'actual innocence' means

factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623.

Accordingly, Petitioner's claim that the evidence was legally insufficient to support his conviction for sexual abuse in the first degree is dismissed.

## 2.    Fourth Amendment Violations

In grounds five through eight of the petition, Petitioner argues that his confession was obtained in violation of his Fourth Amendment rights and was the product of an arrest which was made without probable cause and jurisdiction. <u>See</u> Pet. ¶ 22E-H; Trav., Points V-VIII. With respect to claims five, six, and seven, they are raised for the first time in the instant habeas petition and are therefore unexhausted for purposes of habeas review. <u>See</u> 28 U.S.C. § 2254(b)(1)(A); <u>see also</u> <u>Daye</u>, 696 F.2d at 191. Because claims five, six, and seven could have been raised on direct appeal, but unjustifiably were not, and because they are matters of record that would now be precluded from being raised in a collateral proceeding, the Court deems them exhausted but procedurally defaulted. <u>See</u> N.Y. Court Rules § 500.20; C.P.L. § 440.10(2)(c); <u>Grey</u>, 933 F.2d at 120 . Petitioner makes no showing of the requisite cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claims will result in a miscarriage of

justice.    See Wainwright, 433 U.S. 87-91.  Thus, claims five, six, and seven are dismissed.

With respect to claim eight -- which appears to be based on the allegation that Petitioner was seized by officers in violation of C.P.L. §§ 140.50 (1), 140.10(1)(b) -- was raised on direct appeal, but framed primarily in terms of a violation of state law. See Resp't App. I.   In his *pro se* brief on appeal, Petitioner argued that "he was seized by two township investigators beyond their geographic area of employment without legal authority to do so[,]" calling upon the appellate court to make a statutory interpretation of C.P.L. §§ 140.50(1), 140.10(1)(b).  Id. at 9.  As such, the appellate court was not alerted to the federal constitutional dimension of this claim, thereby rendering it unexhausted for purposes of habeas review.  Nonetheless, Petitioner no longer has a state court forum available to him within which to exhaust the claim.  As discussed above, he has already used his one direct appeal, and collateral review of the claim is foreclosed by C.P.L. § 440.10(2)(c).   Consequently, the claim is deemed exhausted, but procedurally barred.  Petitioner makes no showing of cause and prejudice to overcome the procedural bar, nor has he demonstrated that he is actually innocent, such that this Court's failure to review the claim will result in a miscarriage of justice.  Thus, claim eight is dismissed.

The Court notes that even if Petitioner was able to overcome the procedural bar on claims five through eight, habeas review of them would still be precluded by the doctrine of <u>Stone v. Powell</u>, 428 U.S. 465 (1976) ("Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

### 3. Deprivation of Right to Counsel

In ground two of the petition, Petitioner argues that his statements to Tonya Matthews[2] ("Matthews"), while he was in prison, were taken and used against him in violation of his Sixth Amendment right to counsel. <u>See</u> Pet. ¶ 22B; Trav., Point II. On direct appeal, the Fourth Department rejected this claim on the merits. <u>See</u> <u>Griffin</u>, 41 A.D.3d at 1287.

In <u>Massiah</u>, the Supreme Court held that once a defendant's Sixth Amendment right to counsel attaches, the government may not "deliberately elicit[]" inculpatory information from the defendant "in the absence of counsel," and explicitly applied this prohibition to the use of undercover agents or government informants for the purposes of obtaining such statements. <u>See</u> <u>Massiah v. United States</u>, 377 U.S. 201, 206-07 (1964).

---

[2] Matthews is the mother of Petitioner's child. T.T. 1010-1011.

The Court of Appeals for the Second Circuit has explained that the <u>Massiah</u> rule covers only those statements obtained as a result of an intentional effort on the part of the government. <u>See</u> <u>United States v. Stevens</u>, 83 F.3d 60, 64 (2d Cir. 1996). Moreover, the <u>Massiah</u> rule does not apply to statements made completely voluntarily by an accused. <u>Id.</u> (citing <u>United States v. Accardi</u>, 342 F.2d 697, 701 (2d Cir.), <u>cert. denied</u>, 382 U.S. 954 (1965)).

The Fourth Department's rejection of Petitioner's claim is not contrary to the above principles.

Here, the statements Petitioner made to Matthews, via letters while he was prison, were not obtained as a result of an intentional effort on the part of the government. Rather, the record reflects that, while Petitioner was incarcerated in 2002 for unrelated matters, he voluntarily responded to letters Matthews sent him in which she asked about the instant allegations. The content of those letters was subsequently used against him at trial. There is nothing in the record, however, that suggests Matthews elicited this information from Petitioner at the request of the prosecution, or that she was acting on behalf of or at the behest of the prosecution when she wrote to Petitioner.

On January 13, 2003, approximately two weeks before the trial was to begin, the trial prosecutor interviewed Matthews. During this interview, she divulged to the prosecutor that she had some

letters from Petitioner in which he made mention of the instant crimes. The prosecutor immediately advised the defense of these letters, which prompted the defense to move to preclude the evidence. The trial court summarily denied that motion based on Petitioner's "failure to allege any fact . . . whatsoever to allow for a hearing." Motion Mins. [M.M.] 8.

During Matthews' testimony, she was asked if anyone -- either the police or someone from the District Attorney's Office -- put her up to writing to Petitioner on these issues, to which she responded in the negative. T.T. 842. She further testified that the existence of the letters was revealed for the first time on January 13, 2003 when she spoke with the trial prosecutor and that, if he had not asked, she would never have brought them up. T.T. 842-843. On cross-examination, she reiterated that the police had not asked her to write to Petitioner. T.T. 862.

Accordingly, there is nothing in the record to support Petitioner's theory that Matthews was acting as an agent of the police when she wrote to Petitioner. As such, the Court cannot find that the state court's adjudication of this claim was contrary to or an unreasonable application of settled Supreme Court law. The claim is dismissed.

**4. Denial of Right to Fair Trial**

In ground four of the petition, Petitioner claims that he was denied his constitutional right to a fair trial based on the

following: (1) the trial court's failure to "close the courtroom" for pre-trial proceedings; and (2) comments made by a former Monroe County District Attorney on a local talk-radio show. See Pet. ¶ 22D; Trav., Point IV. The former issue is raised for the first time in the habeas corpus petition and is therefore unexhausted. See 28 U.S.C. § 2254(b)(1)(A). Because Petitioner no longer has a state court forum within which to raise this record-based claim, the Court deems it exhausted but procedurally defaulted. See Grey, 933 F.2d at 120. Petitioner makes no showing of the requisite cause and prejudice to overcome the default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. See Wainwright, 433 U.S. at 87-91. Accordingly, Petitioner's claim that he was deprived of his right to a fair trial based on the trial court's failure to "close the courtroom" to pre-trial proceedings is dismissed. The latter issue, which was raised on direct appeal, was denied on the merits by the Fourth Department. See Griffin, 41 A.D.3d at 1287. As discussed below, this claim is meritless.

The Second Circuit has held that "on § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 814 (2d Cir. 2000); see also Diaz v. Mazzuca, No. 00 Civ. 4843, 2001 U.S. Dist. LEXIS 1624, *9 (S.D.N.Y. Feb. 21, 2001) ("The handling of any possible juror taint

'is entrusted to the sound discretion of the trial court.'")
(quoting <u>Fama</u>, 235 F.3d at 814). Furthermore, "the Supreme Court
has made it clear that 'the trial court's findings of impartiality
[may] be overturned only for manifest error.'" <u>Knapp v. Leonardo</u>,
46 F.3d 170, 176 (2d Cir. 1995) (quoting <u>Patton v. Yount</u>, 467 U.S.
1025, 1031 (1984)).

Petitioner cites to a number of Supreme Court cases in an
attempt to show that the trial judge's decision was contrary to
clearly established federal precedent; however, these cases are
both factually and legally dissimilar to Petitioner's case and
provide no basis whatsoever for the Court to conclude, contrary to
Petitioner's assertion, "that the state court's decision was
clearly in violation of clearly established federal law." Trav.,
12. Thus, the Court confines its analysis to whether Petitioner
has met his burden to rebut the presumption of correctness and
demonstrate manifest error, and therefore show that the trial
judge's decision was an unreasonable determination of the facts
based on the record presented in the trial court.

The Court finds nothing on the record to indicate that the
trial judge committed manifest error in determining that none of
the jurors had been tainted by the former District Attorney's
comments. The record reflects that, during Petitioner's trial, a
former Monroe County District Attorney was a guest on a local talk-
radio show at which he commented on Petitioner's case. Defense

counsel brought this situation to the attention of the Court and moved for a mistrial. The trial judge individually *voir dired* each juror and asked each one if they had read or heard any accounts of this particular case. Each juror responded in the negative, indicating that they had not heard or read any information on Petitioner's case outside the courtroom. T.T. 1035-1048. The trial court therefore denied Petitioner's motion for a mistrial. T.T. 1049-1050. Based on the record before it, this Court cannot find that the trial judge's decision demonstrated manifest error and led to an unreasonable determination of the facts. Accordingly, Petitioner's claim that comments made by a former Monroe County District Attorney on a local talk-radio show deprived him of his right to a fair trial is dismissed.

**5. Ineffective Assistance of Trial Counsel**

In ground one of the petition, Petitioner asserts that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel based on, *inter alia*, counsel's failure to move to have Petitioner's confession and DNA suppressed on the grounds that same were unlawfully obtained in violation of his constitutional rights. See Pet. ¶ 22A; Trav., Point I. Petitioner raised this claim in his second C.P.L. § 440 motion and it was denied on state procedural grounds. See Resp't App. BB. Consequently, as discussed below, the claim is procedurally barred from review by this Court.

By Decision and Order dated March 10, 2008, the Monroe County Court denied this claim on procedural grounds. Pursuant to C.P.L.

§ 440.10(2)(a),[3] the county court found that the issue itself and the underlying allegations had been raised on direct appeal and rejected on the merits. See Resp't App. BB at 4-5. Additionally, the county court denied the claim, pursuant to C.P.L. § 440.10(2)(c), finding that, as framed in Petitioner's current C.P.L. § 440 motion, the claim was a matter of record that could have been raised on direct appeal, but unjustifiably was not. Id. at 5. The state court's reliance on C.P.L. § 440.10(2)(a) and (c) to reject the claim are adequate and independent state grounds, thereby precluding this Court's review of the claim. See, e.g., Cruz v. Berbary, 456 F. Supp. 2d 410 (W.D.N.Y. Oct. 16, 2006) (finding Petitioner's habeas claims procedurally defaulted as trial court dismissed them on state procedural ground, pursuant to CPL § 440.10(2)(a) & (c); D'Alessandro v. Fischer, No. 01 Civ. 2551 (LTS)(DF), 2005 U.S. Dist. LEXIS 31381 (S.D.N.Y. 2005) (finding that the trial court's express reliance on CPL § 440.10(2)(a) indicates that the court rejected Petitioner's ineffective assistance claim on an independent and adequate state procedural ground precluding federal habeas review). Petitioner makes no showing of cause and prejudice to overcome the procedural bar, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, Petitioner's ineffective assistance of counsel claim is dismissed in its entirety.

---

[3]     C.P.L. § 440.10(2)(a) provides that, "the court must deny a motion to vacate a judgment when the grounds or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment . . . ."

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability and I deny Petitioner's pending motion (Dkt. # 28) requesting same. <u>See, e.g.,</u> <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     December 14, 2010
           Rochester, New York